**In re CORDIS CORPORATION, Petitioner.**

**Misc. No. 53.**

United States Court of Appeals, Federal Circuit.

July 10, 1985.

Granger Cook, Jr., Cook, Wetzel & Egan, Chicago, Ill., for petitioner. With him on brief was Dean A. Monco, Cook, Wetzel & Egan, Chicago, Ill.

Lawrence C. Brown, Faegre & Benson, Minneapolis, Minn., for respondent. With him on brief were Elizabeth L. Taylor, Faegre & Benson, Minneapolis, Minn., of counsel and Robert C. Beck, Medtronics, Inc., Minneapolis, Minn.

## ORDER

Before MARKEY, Chief Judge, FRIED-MAN, and RICH, Circuit Judges.

FRIEDMAN, Circuit Judge.

Cordis Corporation (Cordis) has petitioned for a writ of mandamus ordering the United States District Court, District of Minnesota, to dismiss the present action for improper venue. We deny the petition.

### I.

On February 10, 1984, Medtronic, Inc. (Medtronic), a Minnesota corporation with its principal place of business in Minneapolis, Minnesota, filed a complaint in the United States District Court for the district of Minnesota against Cordis alleging patent infringement with respect to four patents owned by Medtronic, as a result of Cordis' sales of implantable heart pacers in Minnesota.

Cordis, a Florida corporation, with its principal place of business in Miami, Florida, filed a motion to dismiss pursuant to Rule 12(b), Fed.R.Civ.P., challenging venue on the basis that Cordis does not have a regular and established place of business in the district of Minnesota. Cordis also contended that no acts of infringement occurred in Minnesota as it claimed that all sales are completed in Florida. The district court denied Cordis' motion to dismiss finding that venue was properly laid in Minnesota.

In its petition for mandamus, Cordis has not specifically challenged any of the incidental factual findings of the district court contained in the district court's memorandum and order dated January 16, 1985, wherein the court denied Cordis' motion to dismiss. Cordis does, however, challenge the court's finding that it has a regular and established place of business in Minnesota, and that it has committed acts of infringement therein, so as to come within the scope of 28 U.S.C. § 1400(b).

Venue in patent infringement actions is controlled exclusively by 28 U.S.C. § 1400(b) which provides:

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of in-

fringement and has a regular and established place of business.

■ For purposes of the patent venue statute, a corporation is a resident only of the state in which it is incorporated. *Fourco Glass Co. v. Transmirra Co.*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). Accordingly, Medtronic is relying upon the second test to demonstrate that venue for this action is proper in Minnesota.

The undisputed facts as found by the district court may be summarized as follows. Cordis is a Florida corporation with its principal place of business in Florida, which sells cardiac pacemakers. To market its pacemakers in Minnesota, Cordis employs two full-time sales representatives, William R. Rutstein and Dixon P. Dahlberg, each based in Minnesota. Both are paid a salary plus commission and they work exclusively for Cordis, which supplies them each with a company owned car.

Cordis is not registered to do business in Minnesota. It does not have a bank account, and it neither owns nor leases an office, house nor any property within the state. Rutstein and Dahlberg maintain offices in their homes. They store Cordis literature, documents and products there. They also complete their paperwork and do other administrative tasks in their home offices. Both claim an income tax deduction for these offices. Rutstein generally keeps about $30,000 worth of Cordis products in his home office while Dahlberg usually has approximately $60,000 worth of Cordis products on hand.

Cordis has engaged a secretarial service in Minnesota, named "I Got It Secretarial", to receive messages, provide typing services, mail Cordis literature and receive shipments of Cordis sales literature. Cordis pays for this service either directly or through reimbursing Rutstein and Dahlberg for any payments made by them. The business cards of Dahlberg and Rutstein list the telephone number answered by the secretarial service. Phone calls to this number are answered "Cordis Corporation." The Minneapolis telephone directory includes Cordis' name and telephone number and lists the address of the secretarial service as Cordis' address. Cordis' name however does not appear on the director of the building occupied by the secretarial service.

Manufacturers of cardiac pacemakers generally market their products through sales representatives who call on physicians or other personnel at the physician's offices or at the hospitals. Hospitals or physicians may order the Cordis pacemakers in several ways. They may order them directly from Cordis' Florida office to be held on consignment at the hospital. In this case, the orders may be placed for the hospital by Cordis' Minnesota sales representatives. However, if a hospital does not wish to maintain a stock of the pacemakers, it may obtain the device directly from the Cordis sales representative before surgery. In this manner the pacemaker is provided to the hospitals from the stock kept by the sales representative and the device is obtained without a formal purchase order. Following the surgery, Rutstein and Dahlberg file the necessary paperwork to obtain payment for the device and to obtain a replacement for their inventory.

In addition to acting as sales representatives, Rutstein and Dahlberg act as technical consultants and in this capacity they are present in the operating room during a significant number of surgical implantations of Cordis pacemakers. During the implantation they provide technical product information to the physician. In addition, they provide post-implantation consultations. Both men also give presentations to small groups of medical personnel regarding technological developments.

In light of Cordis' activities in Minnesota and in light of the nature of the particular business involved, the district court found that the fact that Cordis' representatives do not perform their sales functions from a fixed, physical location such as a rented office space, was not determinative of the issue of whether Cordis maintained a regular and established place of business in Minnesota.

The district court also found that Cordis has committed acts of infringement within Minnesota as a result of its continuous solicitation of sales by its resident representatives, coupled with their demonstrations and technical consultations concerning the pacemakers.

Before this court, Cordis contends that the fact that it does not rent or own a fixed physical location within Minnesota absolutely precludes a finding that it has a regular and established place of business as required by § 1400(b). Cordis further contends that no acts of infringement were committed within the district as all sales occurred in Florida. Thus, Cordis urges that this court issue a writ of mandamus against the district court directing dismissal of this action.

## II.

■ Pursuant to the All Writs Act, 28 U.S.C. § 1651(a) (1976), this court has the authority to issue the requested writ as "necessary or appropriate in aid of" our jurisdiction. *Mississippi Chemical Corp. v. Swift Agricultural Chemicals Corp.*, 717 F.2d 1374, 1379, 219 USPQ 577, 582 (Fed.Cir.1983).

■ The use of mandamus however is limited to exceptional circumstances to correct a "clear abuse of discretion or 'usurpation of judicial power'" by the trial court. *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 382, 74 S.Ct. 145, 147, 98 L.Ed. 106 (1953) (quoting *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132, 89 L.Ed. 1566 (1945).

Thus in *Mississippi Chemical*, this court issued the writ to correct the district court's failure to protect the rights accorded to an alleged infringer under *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). In *Mississippi Chemical*, the right of petitioner to the requested relief was clear in light of the Supreme Court's specific ruling on the question before the court below.

In the instant case, however, Cordis' right to the requested relief is by no means clear. The Supreme Court has held that § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions, and that it is not to be supplemented by the provisions of 28 U.S.C. § 1391(c), having to do with general corporation venue, *Fourco Glass Co. v. Transmirra Corp.* The Supreme Court has also held that where a corporate defendant had no place of business within a jurisdiction, its actions in assuming control of patent litigation against one of its customers did not constitute a waiver of the venue requirement of 28 U.S.C. § 1400(b) so as to permit it to be named as party defendant. *Schnell v. Peter Eckrich & Sons*, 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961).

Thus, while the Supreme Court has stated that the provisions of § 1400(b) are not to be liberally construed, it has yet to address the issue of whether it is necessary to show that a corporate defendant maintains a fixed physical location within a jurisdiction in order to find that it has an established place of business as required by § 1400(b).

Cordis relies strongly upon the language utilized by the Court of Appeals for the Ninth Circuit in *Phillips v. Baker*, 121 F.2d 752, 50 USPQ 540 (9th Cir.), *cert. denied*, 314 U.S. 688, 62 S.Ct. 301, 86 L.Ed. 551 (1941) to support its claim that a "regular and established place of business," requires a specific permanent physical location. However, at issue in *Phillips* was whether venue was proper in California for a Florida corporation which provided a seasonal pre-cooling operation for grain shippers which was conducted by means of a fully transportable apparatus which was assembled at each location, kept in place until the procedure was performed and then dismantled for conveyance to the next location either within or without the jurisdiction. The facts in *Phillips* indicated that the company's presence within the district was merely temporary, and there was no way to contact its representatives except by communication with the home office in Florida.

These facts were very different from those before the district court concerning Cordis' activities within Minnesota.

Cordis also cites *University of Illinois Foundation v. Channel Master*, 382 F.2d 514, 155 USPQ 117 (7th Cir.1967) wherein the Court of Appeals for the Seventh Circuit upheld the dismissal for lack of proper venue of a patent infringement suit against a New York manufacturer of television antennas where the facts demonstrated that its sole employee worked from his home in Illinois promoting sales of his employer's products. All orders from customers were accepted in the New York home office, all shipments were made from the home office to customers and all payments by customers were made to that office. Unlike Cordis' representatives who continually maintain a stock of its products within the district, the sales representative in *Channel-Master* kept no stock or samples of the products. Additionally, while there was evidence that the sales representative therein conducted seminars with distributors to promote his employer's products, there was no evidence to demonstrate that such activities were carried on concerning the specific product which was the subject of the infringement action.

These cases indicate that in determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not as Cordis argues, whether it has a fixed physical presence in the sense of a formal office or store.

With respect to the question of whether Cordis has committed acts of infringement within the jurisdiction, Cordis has not demonstrated that the district court's conclusion on this point constitutes an abuse of discretion, such that it warrants the extraordinary remedy of mandamus.

■ In so ruling, however, we express no opinion on whether there has been infringement; that is a question to be determined at trial. "[T]he issue of infringement is not reached on the merits in considering venue requirements." *Gunter & Cooke, Inc. v. Southern Electric Service Co.*, 256 F.Supp. 639, 648, 149 USPQ 438, 446 (M.D.N.C.1966), *aff'd* 378 F.2d 60, 153 USPQ 655 (4th Cir.1967).

As noted by our predecessor court the remedy of mandamus is "strong medicine" to be reserved for the most serious and critical ills, and if a rational and substantial legal argument can be made in support of the rule in question, the case is not appropriate for mandamus, even though on normal appeal, a court might find reversible error. *Formica Corporation v. Lefkowitz*, 590 F.2d 915, 200 USPQ 641 (CCPA), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979).

■ As the record indicates that a rational and substantial legal argument may be made in support of the court's order denying Cordis' motion to dismiss for lack of proper venue, we decline to issue the writ.

Accordingly,

IT IS ORDERED:

(1) Medtronic's motion for oral argument is denied;

(2) Cordis' motion for leave to file reply to Medtronic's answer to Cordis' petition for writ of mandamus is granted;

(3) Cordis' petition for writ of mandamus is denied;

(4) In view of disposition of Cordis' mandamus petition, Medtronic's motion to dismiss the petition is moot.